UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL PETTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CAUSE NO. 1:21-cv-00538-SEB-DLP |
| | ) |
| AMERICAN SENIOR COMMUNITIES, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S AFFIRMATIVE DEFENSES**

The Plaintiff, Michael Petty ("Plaintiff" or "Petty") respectfully submits this *Memorandum of Law* in Support of his *Motion for Summary Judgment as to Defendant's Affirmative Defenses*.

**INTRODUCTION**

When Michael Petty sought FMLA leave from his employer, American Senior Communities, to bond with and care for his infant daughter during the early stages of the COVID-19 pandemic, it set off a chain of events that ultimately resulted in his termination from the company. Petty subsequently brought suit, alleging that his rights were violated under Title VII of the Civil Rights Act of 1964, Section 1981, and the FMLA. Defendant has asserted the defenses of after-acquired evidence and unclean hands to bar or limit Plaintiff's potential recovery, but, as shown below, neither are appropriate in this case, because Defendant lacks the evidence required to successfully establish the elements of each respective defense. For the reasons discussed herein,

1

Plaintiff respectfully requests that the Court grant its motion for summary judgment on Defendant's affirmative defenses and bar Defendant from presenting such defenses at the trial of this matter.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The Plaintiff, Michael Petty, was employed by the Defendant, American Senior Communities, as a Nursing Schedule Coordinator and Central Supply Clerk at its Eagle Valley Meadows facility in the spring of 2020. [Dkt. #60 at 4]. On April 20, 2020, Petty reached out to Tara McGlothlin, the site's Executive Director, via internal "DocsInk" electronic message, inquiring about leave time for issues caused "in large part" by the COVID-19 pandemic. [Exhibit A, Petty "DocsInk" messages]. McGlothlin instructed Petty to call Michelle Stephens in HR. [Id.] Petty then had the following exchange with Stephens:

> MP: Good afternoon! I was instructed to reach out to you regarding FMLA. I was denied leave due to covid. I've been with the company for over a year and I have a new child whose daycare is closed. Am I eligible?
> MS: I can send you the paperwork if you would like but if it is not for caring for a child with a serious health issue, you do not qualify for FMLA for loss of childcare unfortunately.
> MP: I would appreciate that. I wanted FMLA for time to bond. She's still less than a year old.
> MS: I have printed a copy for you to review. Would you like me to mail it out to you? Or would you like to pick it up?
> MP: Thank you! I'll stop in and pick it up a little later today.

[Id.]. The next day, Petty provided Stephens with a "Request for Leave Under the Family and Medical Leave Act" form on American Senior Communities letterhead. [Id.; Exhibit B, Request for Leave].

At his deposition, Petty testified that he told Stephens that he had a new child whose day care had closed. [Exhibit C, Petty Deposition, 194:14-195:5]. After requesting a copy of Petty's daughter's birth certificate to verify that she was under one year old, Sr. Human Resources Business Partner Laura Ewert approved Petty's request for FMLA leave. [Exhibit D, Answers to Plaintiff's Second Set of Interrogatories]. Petty spent the period he was on FMLA leave "with my baby, her brothers, sometimes with her mother." [Exhibit C, 200:25-201:1]. He spent time with his daughter "between four to seven days a week . . . [s]ometimes overnight, sometimes for the day, sometimes just for a few hours, whatever we could make work with our schedule." [Id. 201:10-16]. During this time, "she wasn't going to day care, from my understanding." [Id. 201:22-23].

When asked if it was true that Petty's daughter's day care facility was closed on April 20, 2020, Petty testified: "From what her mother told me, but I had no actual communication with the childcare facility. I just knew she hadn't been going." [Id. 195:20-22]. Later he testified: "What I knew at the time, the day care was closed, she was at home. And with what I'm finding out now is I don't know if Jamia [the child's mother] was truthful with me about the day care being closed." [Id. 199:1-5]. In fact, the daycare had not closed, and Petty's daughter continued to attend. [Exhibit E, Documents from Train Up A Child Childcare, LLC].

Petty filed an Amended Complaint on March 12, 2021, [Dkt. #6], and Defendant filed its Answer on May 28, 2021. [Dkt. #21]. The Court approved the Case Management Plan ("CMP") on May 24, 2021. [Dkt. #18]. The CMP states that "All motions for leave to amend the pleadings and/or to join additional parties shall be filed on or before August

3

12, 2021." [Id.]. ASC filed its Motion for Leave to Amend its Answer on January 7, 2022. [Dkt. #36]. In its Motion for Leave to Amend, ASC seeks to amend its Answer to add the affirmative defenses of after-acquired evidence and unclean hands. The Court partially granted this Motion over objection on July 26, 2022, allowing Defendant to amend its Affirmative Defense Nos. 17 and 18. [Dkt. #58].

Defendant asserted in its Amended Answer [Dkt. #60] that "Plaintiff is barred from recovery, or his damages must be reduced, as a result of after-acquired evidence that, had it become known by ASC during the court of Plaintiff's employment, would have caused Defendant to terminate Plaintiff's employment." [Dkt. #60 at 27]. Defendant also asserted that "Plaintiff is barred from recovery, his damages must be reduced, and/or his claim for equitable relief is barred or reduced by virtue of the Plaintiff's own unclean hands, specifically, Plaintiff knowingly and intentionally made untrue statements upon which the Defendant relied regarding his need for time off work and FMLA leave. In the Spring of 2020, during the onset of the COVID-19 pandemic, Plaintiff told ASC that his infant daughter's daycare facility had closed and that he needed FMLA leave from April 27, 2020 through July 17, 2020, in order to care for or bond with his daughter." [Id. at 29]. Defendant asserts further that Petty was "engaging in FMLA fraud." [Id. at 31]. However, Defendant has verified under oath that it has not terminated any other employees for "dishonesty or fraud relating to FMLA leave." [Exhibit D at 6-7].

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment after adequate time for discovery against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate — in fact, is mandated — where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

While the moving party bears the initial burden of demonstrating that these requirements have been met, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the moving party has met this burden, the nonmoving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not rest on the pleadings alone but must present fresh proof in support of its position. Id. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). On a motion for summary judgment, the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998).

# ARGUMENT

**A.  Defendant has not produced sufficient evidence to prove its after-acquired evidence affirmative defense.**

Defendant seeks to bar recovery, or reduce Plaintiff's damages, by asserting the affirmative defense of after-acquired evidence. "An employer may be found liable for employment discrimination, but if the employer later – typically in discovery – turns up evidence of employee wrongdoing which would have led to the employee's discharge, then the employee's right to back pay is limited to the period before the discovery of this after-acquired evidence." *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047 (7th Cir. 1999) (quoting *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005)). Defendant asserts that had it known Mr. Petty "knowingly and intentionally made false statements to ASC with the intent of inducing ASC to grant him leave," it would not have granted his request and would have terminated his employment instead. [Dkt. 60 at 28-29].

The standard for an affirmative defense of after-acquired evidence is high. The Seventh Circuit has held that "[i]f [the employer] cannot show by a preponderance of the evidence that the after-acquired evidence would have led to [the employee's] termination, it has not made out the defense. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047-48 (7th Cir. 1999) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361-362 (1995) ("Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.").

The plaintiff in *Sheehan* was accused of lying on a job application by leaving former employers off of a resume, and the Court of Appeals affirmed the trial court's decision that Defendant's after-acquired evidence defense failed as a matter of law because it was undisputed that the employer had never fired an employee for this sort of falsification. Quoting approvingly from the Ninth Circuit, the Court of Appeals stated that "the inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often say they will discharge employees for certain misconduct while in practice they do not." *Id.*, 173 F.3d 1039, 1047 (7th Cir. 2005) (quoting *O'Day v. McDonnell-Douglas Helicopter Corp.*, 79 F.3d 756, 759 (9th Cir. 1996)).

The situation is much the same here. Defendant believes that Plaintiff lied about his daughter's day care being closed, and by extension, his need for FMLA; and now says that had it known he had lied, it would not have granted his request for FMLA leave, would not have returned him to work following his FMLA leave, and would have terminated him upon discovering he was lying. Like the Defendant in *Sheehan*, ASC is not able to prove that Petty lied. It can produce evidence that the day care did not close, but that does not mean Petty lied about it; as his testimony makes clear, he may have misunderstood his daughter's mother, or, she may have lied to him. Defendant holds the burden of persuasion on this issue, and falls short at this crucial initial step. Moreover, the employer must demonstrate that it had an actual employment practice of firing workers with analogous situations to the Plaintiff. *Hollins v. Forest River, Inc.*, 2021 U.S. Dist. LEXIS 152782, at *37 (N.D. Ind. Aug. 13, 2021)

7

(quoting *Roadway Exp., Inc. v. U.S. Dep't of Lab.*, 612 F.3d 660, 666 (7th Cir. 2010)). "Proving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made." *Sheehan,* 173 F.3d 1039, 1047-48 (7th Cir. 1999) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). ASC cannot meet its burden because it admits that it has not terminated any other employees for "dishonesty or fraud relating to FMLA leave." [Exhibit D at 6-7].

Defendant had the opportunity to offer up evidence to prove its defense but declined to do so. When the Court allowed Defendant to amend its Answer to include the additional affirmative defenses of after-acquired evidence and unclean hands, it also granted Plaintiff's unopposed motion to extend the discovery deadline in order to conduct discovery on these defenses. [Dkt. #58, #61]. Plaintiff then proffered the following Interrogatory to the Defendant:

> 20. Identify any other employee Defendant has terminated from 2017 – present for misrepresenting facts upon which FMLA leave was based and/or engaging in "FMLA fraud" and provide the following information:
> a) The name, sex, and race of each employee identified;
> b) Dates of employment, location of employment, and positions held of each employee identified;
> c) Name and position held of the supervisor of each employee identified;
> d) Describe in detail how each employee identified misrepresented the facts on which their FMLA was based and/or engaged in FMLA fraud;
> e) Describe in detail Defendant's discovery of the misrepresentation of facts and/or FMLA fraud; and
> f) Identify any documents relied upon in making the decision to terminate each employee identified.

[Exhibit D at 5-6]. Corresponding Requests for Production sought "[t]he complete employee and personnel file for any employee identified in response to Plaintiff's Interrogatory No. 20" and "[a]ny documents identified in subpart (f)." [Exhibit F at 4-5].

Defendant responded with a slew of objections to these discovery requests and failed to identify any individuals or documents responsive to these requests. [Exhibit D at 6-7; Exhibit F at 4-5]. Defendant did, however, admit in its Response to the Interrogatory that:

> there were no other employees suspected of misrepresenting facts upon which FMLA leave was granted or engaging in fraud in connection with their request for FMLA leave and thus, there have not been any terminations for dishonesty or fraud relating to FMLA leave. There are employees who have terminated for dishonesty/falsification, but it was not related to FMLA leave requests.

[Exhibit D at 6-7]. As to the request for documents, Defendant produced nothing more than an unverifiable spreadsheet, embedded in an email, of unnamed employees at the Eagle Valley Meadows facility who were purportedly terminated for "dishonesty/falsification." Defendant provided no specifics or details about who created the spreadsheet, who these supposed employees were, no explanation whatsoever as to what "dishonesty/falsification" means, when the supposed employees worked for Defendant, who they reported to, nor the nature of what was supposedly falsified. [Exhibit G, e-mail exchange between counsel]. Defendant then ignored Plaintiff's follow-up request seeking additional detail. [Id.]. Defendant's embedded table is not admissible evidence, nor does it qualify as sufficient, to prove Defendant's after-acquired evidence defense. The only discernable information

9

produced in response to Plaintiff's discovery requests seeking evidence on Defendant's affirmative defenses is that Defendant has not fired other employees for doing what it accuses Petty of doing.

The burden of proof falls squarely on Defendant's shoulders to demonstrate to this Court that it fired other employees for the same reason it puts forth in support of its affirmative defense. Plaintiff requested information, with specificity, that Defendant possessed to prove its defenses and got nothing back that comes close to establishing that Defendant has fired other employees for what it now accuses Plaintiff of doing. The Court should no sooner credit Defendant's generalized claims and the unverifiable spreadsheet as evidence to support its defense than it would credit a Plaintiff's uncorroborated testimony such as "there were other employees who received better treatment than me" as comparator evidence sufficient to defeat summary judgment. Defendant has failed to produce sufficient evidence and cannot meet its burden to establish that the after-acquired evidence regarding the daycare not closing would have compelled it to deny Plaintiff's FMLA leave and terminate him rather than return him to his position. The Court should grant Plaintiff's motion for summary judgment and bar Defendant from asserting this defense at trial.

**B.     Defendant has not established the affirmative defense of unclean hands.**

The doctrine of unclean hands bars a plaintiff's claim where: (1) the plaintiff's misconduct was intentional, (2) the plaintiff's wrongdoing concerned the defendant and had an immediate and necessary relation to the matter in litigation, and (3) the

defendant was injured by the plaintiff's conduct. *Am. Senior Cmtys., L.L.C. v. Burkhart*, 2019 U.S. Dist. LEXIS 165229, at *13-14 (S.D. Ind. Sep. 26, 2019) (citing *Barrett v. Grow*, 2008 U.S. Dist. LEXIS 92445, at *15 (S.D. Ind. Nov. 13, 2008). The doctrine of unclean hands is not favored under Indiana law, and "must be applied with reluctance and scrutiny." *Id.* (citing *Wedgewood Cmty. Ass'n, Inc. v. Nash*, 781 N.E.2d 1172 (Ind. Ct. App. 2003)).

    As an initial matter, Defendant has not alleged in its Amended Answer that it was injured or otherwise harmed by Plaintiff's alleged misconduct. [Dkt #60 at 27-31]. Defendant's failure to even allege, let alone support, this required element dooms its defense from the outset. Having said that, Defendant also fails at the first prong to establish that Plaintiff's alleged misconduct was intentional. Defendant repeatedly asserts in its Amended Answer that Plaintiff "knowingly and intentionally" made "false" or "untrue" statements in connection with his FMLA leave request. [Exhibit D at 28-30]. Defendant claims it "learned through investigation and non-party discovery, that the daughter's daycare did not close during 2020 (beyond its normally scheduled holiday closures) and that Plaintiff's daughter had regularly attended daycare from April 2020 through July 2020." [Dkt. #60]. However, Defendant has not and cannot establish that Petty "knowingly and intentionally" made false or untrue statements about the daycare closure. That proposition is directly refuted by Petty's testimony that "[f]rom what her mother told me, but I had no actual communication with the childcare facility. I just knew she hadn't been going." [Id. 195:20-22]. Later he testified: "What I knew at the time, the day care was closed, she was at home. And with what I'm finding

11

out now is I don't know if Jamia was truthful with me about the day care being closed." [Id. 199:1-5]. During this time, [Petty's daughter] "wasn't going to day care, from my understanding." [Id. 201:22-23].

Defendant also cannot establish the second prong of establishing the defense of unclean hands, that the plaintiff's wrongdoing concerned the defendant and had an immediate and necessary relation to the matter in litigation. The immediate and necessary requirement has been described as follows:

> What is material is not that plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant. . . . [W]e should not by this doctrine create a rule comparable to that by which a careless motorist would be "able to defend the subsequent personal injury suit by proving that the pedestrian had beaten his wife before leaving his home."

*Murray v. Conseco, Inc.*, No. 1:03-cv-1701-LJM-JMS, 2009 U.S. Dist. LEXIS 38980, at *9 (S.D. Ind. May 7, 2009) (quoting *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963)). Defendant cannot establish that Plaintiff's alleged misconduct – supposedly lying about the daycare being closed – had an immediate and necessary relation to its decision to grant Plaintiff FMLA leave, return him to his position after FMLA leave, or refrain from terminating him.

Instead, the designated evidence shows that Petty asked Michelle Stephens if he was entitled to leave based on his daughter's daycare closed, and she told him unequivocally that "you do not qualify for FMLA for loss of childcare unfortunately." [Exhibit A]. Petty then told Stephens that he instead "wanted FMLA for time to bond. She's still less than a year old." [Id.]. This is a valid reason for FMLA leave. *Cool v.*

12

*BorgWarner Diversified Transmission Prods.*, 2004 U.S. Dist. LEXIS 570, at *15 (S.D. Ind. Jan. 12, 2004) ("Employers . . . that are covered by the FMLA are required to grant leave to certain employees . . .: (1) for the birth of a son or daughter, and to care for the newborn child; (2) for placement with the employee of a son or daughter for adoption or foster care; (3) to care for the employee's spouse, son, daughter, or parent with a serious health condition; and (4) because of a serious health condition that makes the employee unable to perform the functions of the employee's job." (citing 29 C.F.R. § 825.112). It is not disputed that Petty's "Request for Leave Under the Family and Medical Leave Act" stated that the "Reason for Leave" was "(a) to care for my child born 7/19/19" *not* that his child's daycare had closed. [Exhibit B]. Stephens told Plaintiff that a loss of childcare was not a valid reason for FMLA; however, caring for and bonding with a child less than one year old is, and this is what Plaintiff's request for FMLA was based upon. 29 C.F.R. § 825.112.

Defendant also asserts that it "relied" upon Plaintiff's untrue statements in deciding to grant his FMLA leave, but this, too, is belied by the designated evidence. Defendant stated that:

> Laura Ewert ("Ewert"), the former Sr. Human Resources Business Partner, reviewed the *Request for Leave* form which Plaintiff submitted. Because Plaintiff was seeking leave to bond with his child who was under a year old, Ewert asked Plaintiff to provide a copy of his daughter's birth certificate to verify that, in fact, he had a child under the age of one year. Plaintiff provided the requested birth certificate electronically on or about April 24, 2020. Ewert then approved Plaintiff's request for FMLA leave.

[Exhibit E at 5]. Defendant identifies Ewert as the employee who ultimately made the decision to approve Plaintiff's FMLA leave. It tells us that Ewert sought to verify the

13

age of Plaintiff's daughter, but gives no indication that Ewert considered or even knew about Plaintiff's earlier statement to Stephens about the daycare being closed and, regardless, this was not the reason given on Plaintiff's "Request for Leave" anyway. Defendant is essentially asking the Court to take its word for it in its Amended Answer that it relied on Plaintiff's alleged misrepresentations in considering his request for FMLA leave, but its own Interrogatory answers tell a different story. As such, it has not shown that Plaintiff's alleged wrongdoing concerned the defendant and had an immediate and necessary relation to the matter.

Because the Defendant has not shown that Plaintiff's alleged misconduct was intentional, that the alleged misconduct concerned the defendant and had an immediate and necessary relation to the matter in litigation, and has not alleged damages, Plaintiff respectfully requests that the Court grant its motion for summary judgment on this affirmative defense and bar Defendant from asserting such defense at trial.

## CONCLUSION

Defendant's affirmative defenses of after-acquired evidence and unclean hands do not have the necessary evidence to prove the necessary elements of each defense. Because it cannot make a showing that it terminated other employees with situations analogous to Petty's, it cannot prove its after-acquired evidence defense. And because it fails at all three prongs of the doctrine of unclean hands, it cannot succeed on that defense either. Plaintiff respectfully requests this Court grant its motion for summary judgment on these two defense and bar Defendant from presenting these defenses at the trial of this matter.

Respectfully submitted,

*s/ Eric J. Hartz*
Meghan U. Lehner, #25899-49
Eric J. Hartz, #29676-49
CLEVELAND LEHNER CASSIDY
6214 Carrollton Ave., Suite 200
Indianapolis, IN 46220
Tel: 317-388-5424
Fax: 317-947-1863
Email: meghan@clcattorneys.com
eric@clcattorneys.com

Counsel for Plaintiff, Michael Petty

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed on November 30, 2022 via the Court's CM/ECF system, and notification will be made to the following counsel of record by operation of the Court's system:

Debra A. Mastrian, Atty No. 17863-30A
Suzanne S. Newcomb, Atty No. 20290-41
Capital Center, South Tower 201
North Illinois Street, Suite 1400
Indianapolis, IN 46204
Tel: 317-464-4100
Fax: 317-464-4101
Email: dmastrian@salawus.com
snewcomb@salawus.com

Counsel for Defendant
American Senior Communities

*s/ Eric J. Hartz*
Eric J. Hartz